UNITED STATES BANKRUPTCY COURT

DISTRICT OF HAWAII

| In re<br><br>MAUI INDUSTRIAL LOAN & FINANCE COMPANY,<br><br>      Debtor. | Case No. 10-00235<br>Chapter 7 |
|---|---|
| DANE S. FIELD,<br><br>      Plaintiff,<br><br>vs.<br><br>THE TRUST ESTATE OF ROSE KEPOIKAI, et al.,<br><br>      Defendants. | Adv. Pro. No. 10-90126<br><br><br><br>Re: Docket No. 502 |

## MEMORANDUM OF DECISION ON PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT ON COUNTS 2, 3, AND 4

    In this adversary proceeding, the chapter 7 trustee of a company that operated a Ponzi scheme seeks to recover money transferred to the defendants. The plaintiff filed a motion for partial summary judgment on December 9, 2011. Numerous defendants opposed the motion. At the hearing on the motion, on May 18, 2012, I permitted the parties to file supplemental documents. These documents have been filed and the motion is ready for decision.

## I. FACTS

Defendant Trust Estate of Rose Kepoikai (the "Trust") is a trust established by the will of Rose Kepoikai. Ms. Kepoikai died around 1958.

On January 1, 1987, defendant Lloyd Kimura was appointed successor trustee for the Trust, charged with managing the Trust's assets. Mr. Kimura also owned and controlled Maui Industrial Loan & Finance Co. ("MFC"), a Hawaii corporation based on Maui. Mr. Kimura caused the Trust to invest substantial sums in MFC, and MFC made substantial payments to the Trust which ostensibly represented a return on the Trust's investment.

On October 26, 1999, Mr. Kimura resigned as successor trustee of the Trust, apparently because the Trust had terminated in accordance with its terms several years earlier, and at least one of the beneficiaries was pressing Mr. Kimura to wind up the Trust. A state court appointed defendant Robert E. Rowland as successor trustee. Mr. Rowland is an attorney who was, at the time, a partner in the law firm of Mancini, Rowland & Welch, now known as Mancini, Welch & Geiger LLP.

Following his appointment, Mr. Rowland discovered the transfers to MFC that Mr. Kimura had engineered and concluded that Mr. Kimura "appeared to have improperly diverted certain funds from" the Trust. Dkt. 772, Decl. of Robert E.

U.S. Bankruptcy Court - Hawaii    #10-90126   Dkt # 944   Filed 07/30/12   Page 2 of 20

Rowland, at 2. Mr. Rowland demanded that Mr. Kimura return the money. Mr. Kimura responded, through counsel, that "Mr. Kimura had lent those funds to third parties through his company Maui Finance Co. ('MFC') and that he would be liquidating loans to be in a position to return the funds to the [Trust]." Id. An accounting firm engaged by Mr. Rowland determined that Mr. Kimura owed the Trust approximately $1.5 million. Mr. Kimura signed a promissory note in that amount with interest at ten percent and provided collateral for his obligation. Id. at 3. Mr. Kimura eventually repaid the note in full with checks drawn on MFC accounts.

After Mr. Rowland collected these amounts and wound up the Trust's affairs, he distributed the Trust's assets to its beneficiaries.

On January 28, 2010, MFC filed for chapter 7 relief under the Bankruptcy Code and plaintiff Dane S. Field was appointed trustee.

On January 5, 2011, Mr. Kimura pleaded guilty to numerous federal felonies related to a Ponzi scheme and executed a plea agreement. Mr. Kimura admitted that, from 1986 until the date of bankruptcy, MFC, under Mr. Kimura's direction, enticed investors to invest in a Ponzi scheme which promised substantial returns.

The trustee commenced this adversary proceeding on October 17, 2010, to recover as fraudulent the transfers made by MFC to the Trust as initial transferee

3

and Mr. Rowland, the Mancini firm, and the beneficiaries of the Trust (the "Beneficiaries") as subsequent transferees. The trustee now seeks partial summary judgment on transfers totaling $2,383,774.66.[1]

**II.  STANDARD**

Summary judgment is proper when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a), Fed. R. Bankr. P. 7056; see also Barboza v. New Form, Inc. (In re Barboza), 545 F.3d 702, 707 (9th Cir. 2008). In resolving a summary judgment motion, the court does not weigh evidence, but rather determines only whether a material factual dispute remains for trial. Covey v. Hollydale Mobilehome Estates, 116 F.3d 830, 834 (9th Cir. 1997). In making this determination, the court views the evidence in the light most favorable to the nonmoving party and all justifiable inferences are to be drawn in favor of the nonmoving party. McSherry v. City of Long Beach, 584 F.3d 1129, 1135 (9th Cir. 2009).

---

[1] The trustee originally sought summary judgment for $3,179,783.85. After I directed the trustee to provide additional authentication for the documentary evidence supporting the motion, he reduced his request (reserving his right to seek the additional amount in subsequent proceedings).

Many of the Beneficiaries have settled with the trustee. The trustee has withdrawn his motion as to these defendants.

4

U.S. Bankruptcy Court - Hawaii   #10-90126   Dkt # 944   Filed 07/30/12   Page 4 of 20

## III. DISCUSSION

The trustee seeks partial summary judgment on his claims that the transfers to the defendants were fraudulent under the Bankruptcy Code, 11 U.S.C. § 544(b)(1) (2006), and the Hawaii Uniform Fraudulent Transfer Act, Haw. Rev. Stat. § 651C-4(a) (2009) (counts 3 and 4). The trustee further contends that the defendants are liable for the fraudulent transfers pursuant to 11 U.S.C. § 550(a)(1) (count 2).

### A. Admissibility of Evidence

At the hearing on the motion, I directed the trustee to provide additional authentication of the evidence supporting the motion and gave the defendants an opportunity to respond.[2] The trustee has now filed additional materials[3] and the defendants have responded. For the following reasons, I will overrule all of the evidentiary objections.

---

[2] Mr. Rowland objected, claiming that I should have denied the motion because the existing record was insufficient. Rule 56 explicitly authorizes the procedure I adopted: "If a party fails to properly support an assertion of fact . . ., the court may give an opportunity to properly support . . . the fact." Fed. R. Civ. P. 56(e)(1).

[3] Mr. Rowland objects to the memorandum filed by the trustee, since I referred only to declarations at the hearing. My words at the hearing were too narrow. The memoranda filed by the trustee and the defendants have been helpful to me. But for the memoranda, I would have had to decipher the evidence independently. The defendants were not prejudiced because they filed their own memoranda. If anyone's filing exceeds that which I authorized, it is the Mancini firm's, because that memorandum says almost nothing about the evidentiary issues which the supplemental filings were supposed to cover; but I will not strike that filing either.

U.S. Bankruptcy Court - Hawaii   #10-90126   Dkt # 944   Filed  07/30/12   Page 5 of 20

1. *Jennie Kimura Declaration*

Mr. Rowland objects to the declaration of Jennie Kimura on the grounds that it does not lay a proper foundation for business records and is insufficiently detailed. I disagree. The declaration is sufficient.

Mr. Rowland questions Mrs. Kimura's declaration because she relies in part on Mr. Kimura's records and Mr. Kimura is an admitted fraud. This objection does not render the records inadmissible. The records covered by this paragraph of Mrs. Kimura's declaration are checks. There is no evidence, and no reason to believe, that any of those checks are fabrications.

Mr. Rowland points out inconsistencies between Mrs. Kimura's declaration, the incorporation papers for MFC, and Mr. Kimura's testimony at the meeting of creditors. The discrepancies are minor and not sufficient to render Mrs. Kimura's testimony inadmissible.

2. *Bradley Tamm Declaration*

Mr. Rowland objects to the declaration by the trustee's counsel that authenticates the checks. I need not reach this objection because I have held that Mrs. Kimura's declaration is admissible, and it authenticates all of the checks.

3. *Declaration of Lisa Yoshida*

Mr. Rowland objects to the declaration of Lisa M. T. Yoshida which

6

authenticates two letters that her accounting firm sent to Mr. Rowland. It is more than likely that Lisa M.T. Yoshida is the married name of the Lisa M. Toma who signed the letters. If that is so, Ms. Yoshida can authenticate the letters. In any event, the declarations of David R. Spee and David M. Jorgensen, to which Mr. Rowland does not object, authenticate the same letters.

### 4. *Request for Delay to Take Depositions*

Mr. Rowland argues that he should have an opportunity to depose the declarants. Mr. Rowland has not provided the affidavit or declaration that Fed. R. Civ. P. 56(d) requires. He has also failed to explain why he has made absolutely no effort to take the depositions, even though some of the declarations were filed about eight months before the hearing on the motion and the rest were served a month before his supplemental memorandum was due.

### 5. *Checks as "Commercial Paper"*

Under Fed. R. Evid. 902(9), commercial paper and related documents require no extrinsic evidence of authenticity for admission. Mr. Rowland argues that this rule does not cover copies of checks. He is probably correct, but the copies are admissible under Fed. R. Evid. 1003. There is no genuine question about the original checks' authenticity and it is not unfair in the circumstances to admit the copies of the checks. For this reason, I need not reach Mr. Rowland's

7

arguments under Fed. R. Evid. 1004.

      6.    *Bank Statements*

Mr. Rowland objects to the admission of statements for the Trust's bank account during the period of MFC's transfers to the Trust. Mr. Rowland objects that the statements are not "related" to commercial paper for purposes of rule 903(9). I disagree and I also hold that there is no genuine question of authenticity and no unfairness within the meaning of rule 1003.

Mr. Rowland also objects that the trustee has not offered all of the bank statements for the relevant period. If Mr. Rowland thinks the trustee has omitted anything significant, he could and should have offered it.

      B.    <u>Trustee's Right to Avoid Transfers</u>

Under section 544(b)(1), the plaintiff trustee succeeds to the rights of an actual unsecured creditor existing at the commencement of the case and has the authority to prosecute that creditor's state law fraudulent transfer actions. The trustee need not identify a specific unsecured creditor, as long as an unsecured creditor exists. <u>In re Appleseed's Intermediate Holdings, LLC</u>, 470 B.R. 289 (D. Del. 2012); <u>In re Leonard</u>, 125 F.3d 543, 544 (7th Cir. 1997). Many creditors have filed unsecured claims in the underlying bankruptcy case. <u>See</u> Bk. Case No. 10-00235, Cl. Reg. The trustee, therefore, has the authority to challenge the

8

alleged transfers under applicable state law.

    C.    <u>Elements of Fraudulent Transfer</u>

The Hawaii Uniform Fraudulent Transfer Act permits the trustee to avoid "a transfer made or obligation incurred by a debtor [that] is fraudulent as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation . . . with actual intent to hinder, delay, or defraud any creditor of the debtor . . . ." Haw. Rev. Stat. § 651C-4(a)(1).

The trustee has proven the elements of a fraudulent transfer. Mr. Kimura's plea agreement conclusively establishes that MFC operated a Ponzi scheme with the intent to hinder, delay, or defraud creditors. Dkt. no. 503, ex. A; <u>In re Slatkin</u>, 525 F.3d 805 (9th Cir. 2008). Courts presume that Ponzi scheme operators intend to hinder, delay, or defraud creditors. <u>See</u>, <u>e.g.</u>, <u>Donell v. Kowell</u>, 533 F.3d 762, 770 (9th Cir. 2008); <u>Barclay v. Mackenzie</u>, 525 F.3d 700, 704 (9th Cir. 2008). Where the organizer admits the existence of a Ponzi scheme in a criminal plea, the bankruptcy trustee need only establish that transfers were made between certain years and for a total certain sum. <u>In re Thomas</u>, 47 B.R. 27, 31 (Bankr. S.D. Cal. 1984).

The Mancini firm complains that it has not had an opportunity to depose

U.S. Bankruptcy Court - Hawaii   #10-90126   Dkt # 944   Filed  07/30/12   Page 9 of 20

Mr. Kimura. Because Mr. Kimura's plea conclusively establishes his fraudulent intent, his deposition could not produce probative and admissible evidence.

The trustee proved that MFC transferred at least $2,383,774.66 to the Trust. The transfers are fraudulent under 11 U.S.C. § 544(b)(1) and Haw. Rev. Stat. § 651C-4(a).

### D.     Limitations Period

The complaint is timely. A claim under section 651C-4(a)(1) must be brought "within four years after the transfer was made or the obligation was incurred or, if later, within one year after the transfer or obligation was or could reasonably have been discovered by the claimant[.]" Haw. Rev. Stat. § 651C-9(1). The limitations period for the trustee begins to run when the last creditor could reasonably have discovered the fraudulent nature of a particular transfer. Picard v. Chais (In re Madoff), 445 B.R. 206, 220 (Bankr. S.D. N.Y. 2011); In re G-I Holdings, 313 B.R. 612, 639 (Bankr. D. N.J. 2004). For a trustee in bankruptcy, any action in which the limitations period has not expired prior to the filing of a bankruptcy petition is tolled for up to two years after the filing. 11 U.S.C. § 108(a).

The trustee presented evidence that at least one reasonably diligent creditor would not have discovered the fraudulent nature of the transfers until less than one

10

year before the commencement of the bankruptcy case. Dkt. no. 503, Exhibits N-V.

Mr. Rowland argues that the eleven declarations provided by the trustee are "vague, formulaic, and apparently drafted by Plaintiff's counsel." I disagree that they are either vague or formulaic. Rather, they lay out in considerable detail the circumstances in which the declarants made investments in MFC, the diligence of their investigation of MFC, and their failure to uncover the Ponzi scheme. The fact that a declaration was drafted by counsel does not render the declaration inadmissible and does not necessarily even discredit it.

Mr. Rowland also argues that he has not had an opportunity to depose the declarants. This is false. The trustee filed the eleven declarations in December 2011. It is now July 2012. None of the defendants has made the slightest effort to depose any of the eleven declarants.

Mr. Rowland further argues that the declarations do not establish that the complaint is timely. I find otherwise. The declarations make clear that at least one reasonably diligent creditor did not discover the Ponzi scheme until less than one year prior to the bankruptcy filing. Neither Mr. Rowland nor any other defendant has offered any evidence (as opposed to argument) to the contrary.

The limitations period under Haw. Rev. Stat. § 651C-9(1) had not expired

11

as of the date of the bankruptcy filing. The trustee commenced this adversary proceeding less than two years after the bankruptcy filing. The trustee's claims are therefore timely.

    E.    <u>The Defendants' Liability</u>

        1.    *The Trust as Initial Transferee*

The trustee seeks to recover the avoidable transfers from the defendants pursuant to 11 U.S.C. § 550. This section provides that: "to the extent that a transfer is avoided under section 544 . . ., the trustee may recover, for the benefit of the estate, the property transferred, or, if the court so orders, the value of such property, from . . . the initial transferee of such transfer . . . or any immediate or mediate transferee of such initial transferee." 11 U.S.C. § 550(a)(1). It is important to identify the initial transferee because subsequent transferees have more powerful defenses.

The trustee alleges that the Trust is the initial transferee. Mr. Rowland and the Mancini firm argue that the Trust was not the initial transferee, but rather "mere conduits" and, consequently, cannot be liable as the initial transferee.[4]

---

[4] Mr. Rowland and the Mancini firm also argue that they were not the initial transferee, but the Trustee does not argue that they were.

Most of the money flowed through the Mancini firm's trust account en route to the Beneficiaries. The trustee concedes, for the purpose of the motion, that the Mancini firm was a "mere conduit" as to the money that passed through the firm's client trust account on its way to

U.S. Bankruptcy Court - Hawaii   #10-90126   Dkt # 944   Filed 07/30/12   Page 12 of 20

This circuit has adopted the "dominion" test for determining whether a person or entity is an initial transferee or a mere conduit. See In re Incomnet, Inc., 463 F.3d 1064, 1069 (9th Cir. 2006). Under this test, "a transferee is one who . . . has 'dominion over the money or other asset, the right to put the money to one's own purposes.'" Id. (quoting Abele v. Modern Fin. Plans Servs., Inc. (In re Cohen), 300 F.3d 1097, 1102 (9th Cir. 2002)). The focus of the inquiry is whether the entity held legal title over the money and discretion concerning its use. Id. (citing Bonded Fin. Servs., Inc. v. European Am. Bank, 838 F.2d 890, 893-94 (7th Cir. 1988)). The defendant relying on this defense bears the burden of proving that it did not have the requisite dominion. In re Lambertson Truex, LLC, 458 B.R. 155, 160 (Bankr. D. Del. 2011).

The Trust is the initial transferee of the transfers. The Trust held legal title over all assets brought into the Trust, including the money it received from MFC. In nearly all cases, legal title establishes dominion. See In re Incomnet, Inc., 463 F.3d at 1074 ("In the vast majority of cases, possessing legal title to funds will equate to having dominion over them."). Ms. Kepoikai's will gave the trustees nearly unlimited discretion over the investment of the trust assets; it provides that the trustees of the Trust may "hold, manage, control, rent and lease [the trust

---

the Beneficiaries.

U.S. Bankruptcy Court - Hawaii   #10-90126   Dkt # 944   Filed  07/30/12   Page 13 of 20

estate] as to them may be deemed proper." Dkt. no. 182, Exhibit 1, at 6. The defendants have failed to carry the burden of proving that the Trust is a mere conduit and not the initial transferee. See In re Lambertson Truex, LLC, 458 B.R. at 160.

2.   *The Trust's Good Faith Defense*

The initial transferee of a transfer avoided under section 651C-4(a)(1) has an affirmative good faith defense: "[a] transfer . . . is not voidable under section 651C-4(a)(1) against a person who took in good faith and for a reasonably equivalent value[.]" Haw. Rev. Stat. § 651C-8(a). The Trust, as initial transferee, bears the burden of establishing both of these elements. In re Cohen, 199 B.R. 709, 718 (B.A.P. 9th Cir. 1996); Uniform Fraudulent Transfer Act § 8(a) comment 1 ("The person who invokes this defense carries the burden of establishing good faith and the reasonable equivalence of the consideration exchanged.") (emphasis added).

Viewing the evidence in the light most favorable to the Trust, there is a genuine dispute of fact regarding the Trust's good faith. Mr. Rowland denies that he knew or suspected that MFC was a Ponzi scheme. But Mr. Rowland had ample reason to be suspicious of Mr. Kimura. He knew that Mr. Kimura had misappropriated Trust funds. He knew that Mr. Kimura had not wound up the

trust promptly after its termination, surely because doing so would have revealed Mr. Kimura's misappropriation. He knew (because Mr. Kimura told him so) that Mr. Kimura had taken the Trust's money and lent it to others through MFC. He knew that Mr. Kimura was not able to repay the money immediately after Mr. Rowland caught him with his hand in the cookie jar. He knew that Mr. Kimura planned to pay his debt to the Trust by borrowing money from others (the behavior that lies at the heart of a Ponzi scheme). He knew that Mr. Kimura paid his debt to the Trust, not with his money, but rather with MFC's money. He even knew that one of the MFC checks bounced. Dkt. no. 845-8 at 42. Knowing all of this, Mr. Rowland could well have doubted that MFC was legitimate and financially sound. But Mr. Rowland's declaration is barely sufficient to create a genuine dispute of fact.

Even if the Trust could prove that it received the transfers in good faith, however, it cannot prove that value was given. The Trust arguably gave value to Mr. Kimura by satisfying his personal debt. The Trust did not, however, give any value to MFC. The purpose of the fraudulent transfer statutes are to return lost value to the debtor's diminished estate to redistribute for the benefit of all creditors. Value given to a party other than the debtor does not mitigate damage to other creditors or otherwise fulfill the purpose of the statutes. The primary focus

15

of the reasonable value inquiry, therefore, must be on whether the <u>debtor</u> received reasonably equivalent value, not on whether the defendants gave reasonably equivalent value to someone else. <u>See</u>, <u>e.g.</u>, <u>In re Lucas Dallas, Inc.</u>, 185 B.R. 801, 807 (B.A.P. 9th Cir. 1995); <u>In re Agricultural Research & Technology Group, Inc., (Hayes v. Palm Seedlings Partners-A)</u>, 916 F.2d 528, 540 (9th Cir. 1990). Because the Trust did not give equivalent value to the debtor (MFC), it cannot rely on the good faith defense under Haw. Rev. Stat. § 651C-8(a).

3. *Rowland's Liability as Trustee*

Mr. Rowland is personally liable for the transfers pursuant to Haw. Rev. Stat. § 560:7-306(b). At the time of the relevant transfers, that section provided: "A trustee is personally liable for obligations arising from ownerhsip or control of property of the trust estate and for torts committed in the course of administration of the trust estate." Haw. Rev. Stat. § 560:7-306(b). The Trust is liable to the bankruptcy trustee to return property of the trust estate which it received in a fraudulent transfer. This obligation "aris[es] from ownership or control" of the Trust's property. Therefore, Mr. Rowland is personally liable for that obligation.[5]

4. *Liability of Mancini and Rowland as Transferees*

Mr. Rowland and the Mancini firm accepted transfers from the Trust as

---

[5] Mr. Rowland cites the language of the same statute after an amendment in 2009. The amended statute is not applicable because the avoidable transfers occurred years earlier.

16

U.S. Bankruptcy Court - Hawaii    #10-90126    Dkt # 944    Filed 07/30/12    Page 16 of 20

payment for professional services rendered. Both defendants, therefore, are subsequent transferees and entitled to the good faith defense under section 550(b) of the Bankruptcy Code.

Unlike initial transferees, subsequent transferees are entitled to the defense if they gave value to the person or entity from whom they acquired the property; in this case, the Trust. As such, Mr. Rowland and the Mancini firm gave value to the Trust through their professional services.

Disputes of fact remain, however, as to the element of good faith. As noted above, Mr. Rowland had reason to suspect that all was not well with Mr. Kimura and MFC. There is a genuine dispute concerning whether there was sufficient information to tip off Mr. Rowland to Mr. Kimura's fraudulent conduct. Mr. Rowland was also a partner in the Mancini firm for part of his tenure as successor trustee for the Trust. During this period, Mr. Rowland's knowledge is imputed to Mancini. Thus, disputes of fact remain concerning whether the Mancini firm also took the transfers in good faith.

     5.    *Liability of Beneficiaries*

The Beneficiaries, as subsequent transferees, are entitled to the good faith defense under section 550(b), which protects such transferees that have taken for value, in good faith and without knowledge of the voidability of the transfer. 11

U.S. Bankruptcy Court - Hawaii    #10-90126    Dkt # 944    Filed 07/30/12    Page 17 of 20

U.S.C. § 550(b)(1). None of the Beneficiaries, however, can rely on this defense, because none of them gave any value to anyone. The distributions from the Trust to the Beneficiaries were intended as gifts from Rose Kepoikai. The Beneficiaries took these transfers without providing any value in return.

Various Beneficiaries filed pro se oppositions to the trustee's motion. These oppositions emphasize that none of the Beneficiaries engaged in any wrongdoing; they simply accepted distributions from Auntie Rose's estate without any knowledge of MFC or its Ponzi scheme. The premise is correct but the conclusion does not follow. The old label "fraudulent transfers," which dates back to the sixteenth century, suggests that only culpable people must return the transferred property, but that is not the case. The fraudulent transfer law is not meant to punish wrongdoers. Instead, the law recognizes that, when a person or company becomes insolvent, its creditors (most of whom are innocent victims, just like the Beneficiaries) should share the loss proportionally. If the debtor made transfers that benefitted some creditors at the expense of others, the recipients (even if innocent) must return the property so the pain of the insolvency is shared more equitably.

Defendant Noel Ululani Baily Wilson Woodard requests a jury trial on the case "in lieu of summary judgment." I will deny this request. Ms. Woodard is too

18

U.S. Bankruptcy Court - Hawaii   #10-90126    Dkt # 944    Filed 07/30/12    Page 18 of 20

late to request a jury trial. Even if she were entitled to a jury trial, that would not preclude me from granting a motion for summary judgment.

I have carefully considered the other objections of the pro se Beneficiaries, and have concluded that none of these objections have any merit.

F. Prejudgment Interest

This court has the authority to award prejudgment interest under federal law. In re Slatkin, 525 F.3d at 820. The trustee should recover pre-judgment interest at the Hawaii rate of 10 percent per annum from the date on which the transfers were made. Haw. Rev. Stat. § 636-16; Donell, 533 F.3d at 772; Eastman v. McGowan, 86 Hawai'i 21, 28, 946 P.2d 1317, 1324 (1997).

* * *

For these reasons, the trustee's motion for summary judgment is granted in part as follows:

1. The transfers of $2,383,774.66 by MFC to the Trust are avoided;

2. The trustee may recover the avoided transfers, plus prejudgment interest at 10% per annum from the date of the respective transfers, from the Trust;

3. Mr. Rowland is personally liable for the Trust's obligation to the trustee; and

4. The trustee may recover from the Beneficiaries any distributions they

19

U.S. Bankruptcy Court - Hawaii    #10-90126    Dkt # 944    Filed 07/30/12    Page 19 of 20

received from the Trust plus prejudgment interest at 10% per annum from the date of distribution to the respective Beneficiary.

In all other respects, the motion is denied without prejudice.

/s/ Robert J. Faris
United States Bankruptcy Judge
Dated: **07/30/2012**

20

U.S. Bankruptcy Court - Hawaii   #10-90126   Dkt # 944   Filed 07/30/12   Page 20 of 20