UNITED STATES BANKRUPTCY COURT

DISTRICT OF HAWAII

| | |
|---|---|
| In re<br><br>MAUI INDUSTRIAL LOAN &<br>FINANCE COMPANY,<br><br>      Debtor. | Case No. 10-00235<br>Chapter 7 |
| DANE S. FIELD,<br><br>      Plaintiff,<br><br>vs.<br><br>THE TRUST ESTATE OF ROSE<br>KEPOIKAI, et al.,<br><br>      Defendants. | Adv. Pro. No. 10-90126<br><br><br><br>Re: Docket No. 961 |

## MEMORANDUM OF DECISION ON
## DEFENDANTS' MOTION TO RECONSIDER

In this adversary proceeding, the bankruptcy trustee of a company that operated a Ponzi scheme seeks to recover money transferred to the defendants. The plaintiff filed a motion (docket no. 502) for partial summary judgment on December 9, 2011. Numerous defendants opposed the motion. On July 30, 2012, I issued a memorandum of decision and order (docket no. 944) granting in part the plaintiff's motion for partial summary judgment. Defendant Robert E. Rowland

timely filed a motion to reconsider the order, and defendant Mancini, Welch & Geiger LLP joined the motion. Docket no. 961, 966. The bankruptcy trustee opposed the motion. At the hearing on the motion, on September 21, 2012, I took the matter under advisement.

On October 12, 2012, I issued an order (dkt. no. 1029) requesting that the parties submit supplemental briefing on the issue of Mr. Rowland's personal liability. The matter has now been fully briefed and is ready for decision.

**I.      STANDARD**

Mr. Rowland and the Mancini firm ask the court to "reconsider, amend, and clarify" the court's July 30 order. A motion for reconsideration is not specifically contemplated by the Federal Rules; such a request is commonly interpreted as a motion to alter or amend an order or judgment pursuant to Fed. R. Civ. P. 59(e), made applicable to bankruptcy proceedings by Fed. R. Bankr. P. 9023.

To prevail under rule 59(e), the moving party must show a manifest error of fact, a manifest error of law, or newly discovered evidence. 389 Orange Street Partners v. Arnold, 179 F.3d 656, 665 (9th Cir. 1999). To promote the interests of finality and conservation of judicial resources, reconsideration is to be afforded only in extraordinary circumstances. Id.; see also In re Hernandez, 468 B.R. 396, 401 (Bankr. S.D. Cal. 2012). The motion "may not be used to raise arguments or

2

U.S. Bankruptcy Court - Hawaii   #10-90126   Dkt # 1045   Filed 11/21/12   Page 2 of 13

present evidence for the first time when they could reasonably have been raised earlier in the litigation." Kona Enters., Inc. v. Estate of Bishop, 229 F.3d 877, 890 (9th Cir. 2000).

## II. DISCUSSION

### *Initial Transferee*

Mr. Rowland and the Mancini firm challenge my determination that the Trust is the initial transferee. I stated that the defendants carry the burden of proving that the Trust Estate of Rose Kepoikai (the "Trust") is a mere conduit and not the initial transferee. They correctly point out that this was wrong; the bankruptcy trustee has the burden of proving that the defendant is a "transferee" within the meaning of the statute. This error, however, does not change my view that the Trust is the initial transferee.

Section 550(a) of the Bankruptcy Code provides that "to the extent that a transfer is avoided under section 544 . . . [or] 548 . . ., the trustee may recover . . . the property transferred, or . . . the value of such property, from – (1) the initial transferee of such transfer or the entity for whose benefit such transfer was made; or (2) any immediate or mediate transferee of such initial transferee." 11 U.S.C. § 550(a).

The statute does not define the word "transferee" or the phrase "initial

3

transferee." In the Ninth Circuit, a transferee is one who has "dominion" over the transferred property. Nat'l Tel. & Telecomm'ns, Inc. v. Universal Serv. Admin. Co. (In re Incomnet, Inc.), 463 F.3d 1064, 1071 (9th Cir. 2006). "The dominion test focuses on whether the recipient of funds has legal title to them and the ability to use them as he sees fit." Id.

The dominion test relies heavily on whether a party took legal title to the transferred property. "The dominion test we have crafted strongly correlates with legal title. . . . In the vast majority of cases, possessing legal title to funds will equate to having dominion over them." Id. at 1073. In "those unusual situations in which legal title to funds and the right to put those funds to use have been separated," id. at 1073-74, the party with "discretion," "authority," or "power" over the funds has "dominion." Id. at 1074.

In making this determination, one must remember that someone always has dominion over property, id. at 1076, and that "dominion" does not mean absolute unfettered power, because the law always restrains our use of money and property, id. at 1075. Therefore, if several parties have some measure of influence over a particular fund, the party with the greatest amount of power has "dominion." Stated another way, sometimes one can identify the party with "dominion" by a process of elimination.

4

There are only three candidates for the role of "initial transferee": (1) the Beneficiaries of the Trust; (2) Mr. Kimura, the Debtor's principal who caused the Debtor to make the transfers to the Trust; or (3) the Trust itself.

The Beneficiaries could not have been the initial transferees. They did not have legal title to the money and had no power to instruct Mr. Rowland what to do with the money.

For similar reasons, Mr. Kimura is not the initial transferee. Mr. Kimura did not hold title to the funds and had no ability to control what Mr. Rowland, as trustee, did with them. Schafer v. Las Vegas Hilton Corp. (In re Video Depot, Ltd.), 127 F.3d 1195, 1199-1200 (9th Cir. 1997).

This leaves only the Trust. The Trust's use of the money was limited by the will of Rose Kepoikai, but as I found in the July 30 order, the will left broad discretion on the use of funds to the trustee. The limits imposed by the will were not so strict as to deprive the Trust of dominion over the money it clearly owned. See In re Incomnet, 463 F.3d at 1075.

The Trust is liable to return the fraudulent transfers as the initial transferee.

### *Mr. Rowland's Personal Liability*

I previously ruled that Mr. Rowland is personally liable for the transfers pursuant to Haw. Rev. Stat. § 560:7-306(b). At the time of the relevant transfers,

5

that section provided: "A trustee is personally liable for obligations arising from ownership or control of property of the trust estate and for torts committed in the course of administration of the trust estate." Haw. Rev. Stat. § 560:7-306(b).

Mr. Rowland argues that the court should interpret the statute to limit a trustee's liability to the present value of assets in the Trust. Mr. Rowland argues that the legislative history supports this contention.

Statutory interpretation must begin with the language of the statute. United States v. Rosales, 516 F.3d 749, 758 (9th Cir. 2008). "If the plain meaning of the statute is unambiguous, that meaning is controlling . . . ." United States v. Williams, 659 F.3d 1223, 1225 (9th Cir. 2011). The statute in this case unambiguously places personal liability on a trustee for obligations arising from ownership or control of trust property. The statute does not limit this liability in the way that Mr. Rowland suggests.

Even if the statute were ambiguous, the full legislative history does not support Mr. Rowland's position. Mr. Rowland argues that the legislative history of the statute reveals the legislators' intent not to amend the common law. Mr. Rowland, citing the Restatement (Second) of Trusts § 265 (1959), states that the common law holds a trustee liable only to the extent to which the trust estate is sufficient to indemnify him. The bankruptcy trustee, however, explains in great

6

U.S. Bankruptcy Court - Hawaii   #10-90126   Dkt # 1045   Filed  11/21/12   Page 6 of 13

detail the evolution of the common law and legislative history of section 560:7-306. See docket no. 1014, pp. 8-20. When viewed in its full context, the Hawaii legislature appears to have considered and rejected the "modern trend" to limit a trustee's liability as set forth in section 265 of the Restatement and the Uniform Probate Code. Rather, the legislature <u>removed</u> provisions which would have limited a trustee's liability, reasoning that it saw no compelling reason to amend the common law rules. Read in this context, it is clear the legislature was referring to the original common law which placed no restrictions on a trustee's personal liability.

The Trust is liable to the bankruptcy trustee to return property of the trust estate which it received in a fraudulent transfer. This obligation "aris[es] from ownership or control" of the Trust's property. Therefore, Mr. Rowland is personally liable for that obligation.

There remains, however, an issue of the amount of Mr. Rowland's personal liability. The bankruptcy trustee seeks to hold Mr. Rowland personally liable for all of the transfers from the Debtor to the Trust, totaling $2,383,744.66. Mr. Rowland argues that amount must be reduced by $906,048.12, the amount which the Debtor transferred to the Trust before Mr. Rowland became successor Trustee. Mr. Rowland contends that, when he became successor trustee, the Trust account

U.S. Bankruptcy Court - Hawaii   #10-90126   Dkt # 1045   Filed 11/21/12   Page 7 of 13

held only $662.76. In response, the bankruptcy trustee argues that the court must also include among the Trust's assets a certificate of deposit in the approximate amount of $450,000.00.

This issue necessarily involves two questions. First, as a matter of Hawaii law, what is the liability of a successor trustee for the acts of a prior trustee? Second, as a matter of fact, how much money was held by the Trust at the time Mr. Rowland became successor trustee?

Mr. Rowland argues that, as successor trustee, he is not personally liable for transfers that the Trust received and expended while Mr. Kimura was still trustee. Although neither party has produced any good authority for either side of the argument, I agree that a successor trustee is not personally liable, under Haw. Rev. Stat. § 560:7-306(b), for obligations arising out of trust property which the predecessor trustee both received and expended. This is consistent with the language of the statute, which ties the trustee's liability to "ownership or control" of trust property. It is also consistent with policy: if a successor trustee were fully liable for all acts of predecessor trustees, it would be hard to find a prudent person to accept a successor trusteeship.

The bankruptcy trustee argues that, even if Mr. Rowland is not personally liable for all of the transfers which the Trust received prior to Mr. Rowland's

U.S. Bankruptcy Court - Hawaii   #10-90126   Dkt # 1045   Filed   11/21/12   Page 8 of 13

trusteeship, he is liable to the extent of any money that came into his hands upon his appointment. Mr. Rowland does not dispute this legal proposition, but argues that the Trust had only $662.76 in a bank account when he became trustee. This is not correct; the bankruptcy trustee has established, based on Mr. Rowland's own accountings and correspondence, that he received cash assets in the amount of at least $448,793.77 upon his acceptance of the trusteeship. He is personally liable for at least that amount. Accordingly, I will amend my prior order to hold that Mr. Rowland is personally liable for $1,926,520.31 of the Trust's obligation to the bankruptcy trustee.

### *Value Given to the Debtor*

Mr. Rowland and the Mancini firm rely upon the defense of good faith and value, Haw. Rev. Stat. § 651C-8(a). In the July 30 order, I held that the Trust may have given value to Mr. Kimura, but did not give value to the Debtor. In fraudulent transfer cases, the debtor must be the entity to receive reasonably equivalent value. In re Video Depot, Ltd., 127 F.3d at 1198-99; In re Lucas Dallas, Inc., 185 B.R. 801, 807 (B.A.P. 9th Cir. 1995). Mr. Rowland and the Mancini firm challenge this holding on several grounds.

They argue that the court-ordered substantive consolidation of the bankruptcy estates of the Debtor and Mr. Kimura means that value given to Mr.

9

Kimura is also value given to the Debtor.  This argument disregards the fact that the court's order expressly preserved all of the trustee's avoidance claims.  They do not mention, let alone challenge the validity of, that provision.

They further argue that, even prior to the bankruptcy, the Trust had a direct claim against the Debtor which the transfers from the Debtor satisfied.  I reject this argument for three reasons.

First, Mr. Rowland and the Mancini firm did not raise this argument in response to the motion for partial summary judgment.  Mr. Rowland's entire argument related to value in his memorandum in opposition to the motion for summary judgment focuses on the value that <u>Mr. Kimura</u> received in the form of reduction of his debt owed to the Trust.  <u>See</u> docket no. 762.  In his motion for reconsideration, Mr. Rowland, for the first time, argues that the Trust gave value to the Debtor by satisfying claims for restitution or breach of the Uniform Fiduciaries Act.  (Even in the motion for reconsideration, the alleged claim for breach of the Uniform Fiduciaries Act was raised only in a footnote, which contained only a quote from the statute with no further explanation.)  These arguments should have been raised earlier in the litigation.  <u>Kona Enters., Inc.</u>, 229 F.3d at 890.

Second, the argument is a recent invention.  The Trust never asserted a

10

claim against the Debtor. Mr. Rowland, the successor trustee, is an experienced and capable attorney. He diligently investigated potential claims with the help of accountants. Once Mr. Rowland had completed his investigation, he only made claims against Mr. Kimura, accepted a promise of repayment from Mr. Kimura only in his personal capacity, and secured the promise of repayment only with assets belonging to Mr. Kimura. There is no evidence that Mr. Rowland determined the Trust had potential claims against the Debtor.

Third, even if Mr. Rowland had raised the argument timely, it is still missing a crucial ingredient. <u>Innocent</u> investors in a Ponzi scheme are permitted to retain the initial payment amounts in satisfaction of a restitution claim. <u>Donell v. Kowell</u>, 533 F.3d 762, 772 (9th Cir. 2008). When the Trust made the initial "investments" in the Debtor, Mr. Kimura was its trustee. As the principal of the Debtor and architect of the Ponzi scheme, Mr. Kimura had knowledge of all relevant facts. His knowledge is imputed to the Trust. <u>Imperial Fin. Corp. v. Finance Factors, Ltd.</u>, 53 Haw. 203, 206, 490 P.2d 662, 664 (1971). As such, the Trust was not an innocent investor. Mr. Rowland and the Mancini firm do not offer any argument to rebut this point. The Trust, therefore, is not entitled to a restitution claim and did not give value to the Debtor.

11

U.S. Bankruptcy Court - Hawaii   #10-90126   Dkt # 1045   Filed 11/21/12   Page 11 of 13

*Prejudgment Interest*

The court has discretion to grant prejudgment interest under state law on the fraudulent transfers from the date each transfer was made. See In re Slatkin, 525 F.3d 805, 820 (9th Cir. 2008); In re Agricultural Research and Technology Group, Inc., 916 F.2d 528, 541-42 (9th Cir. 1990). "[P]rejudgment interest should not be thought of as a windfall in any event; it is simply an ingredient of full compensation that corrects judgments for the time value of money." Donell v. Kowell, 533 F.3d 762, 772 (9th Cir. 2008) (quoting In re P.A. Bergner & Co., 140 F.3d 1111, 1123 (7th Cir. 1998)).

I find that prejudgment interest is appropriate for at least three reasons. First, it is common for courts to award prejudgment interest in fraudulent transfer cases. See, e.g., In re Slatkin, 525 F.3d at 820; Donell, 533 F.3d at 772; In re Agricultural Research and Technology Group, Inc., 916 F.2d at 542. Second, Mr. Rowland required Mr. Kimura to pay interest at 10 percent and the Debtor in fact paid that interest to the Trust. It is appropriate to require interest on the return obligation at the same rate. Third, prejudgment interest allows for "full compensation that corrects judgment for the time value of money." See Donell, 533 F.3d at 772.

The 10 percent rate of interest appears high when compared to current

12

U.S. Bankruptcy Court - Hawaii   #10-90126   Dkt # 1045   Filed 11/21/12   Page 12 of 13

market rates of interest.  It is the legislature's prerogative, however, to determine the pre-judgment interest rate that it feels appropriate under Hawaii law.  Because it is a matter of state law, I shall defer to the legislature for such decisions.

The bankruptcy trustee should recover pre-judgment interest at the Hawaii rate of 10 percent per annum from the date on which the transfers were made.  Haw. Rev. Stat. § 636-16; <u>McGowan</u>, 86 Hawai'i 21, 28, 946 P.2d 1317, 1324 (1997).

*Findings and Recommendations*

When the bankruptcy court has completed all pre-trial matters, I will generate a comprehensive set of recommended findings and a prosed judgment for the District Court.

\* \* \*

For these reasons,  Mr. Rowland's personal liability for the Trust's obligations to the trustee is reduced to $1,926,520.31.  In all other respects, the motion for reconsideration is denied.



/s/ Robert J. Faris
United States Bankruptcy Judge
Dated: **11/21/2012**

U.S. Bankruptcy Court - Hawaii   #10-90126   Dkt # 1045   Filed  11/21/12   Page 13 of 13