

**Date Signed:**
**December 18, 2013**

SO ORDERED.

Robert J. Faris
United States Bankruptcy Judge

# UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF HAWAII

*In re Maui Ind. Loan & Fin. Co., Inc.*,
Debtor.

DANE S. FIELD,

      Plaintiff,

v.

THE TRUST ESTATE OF ROSE
KEPOIKAI, *et al*.,

      Defendants.

Ch 7 No. 10-BK-00235

**Adv. No. 10-AD-90126**

Date:   December 17, 2013
Time:   9:30 a.m.
Judge:  Robert J. Faris

## RECOMMENDED FINDINGS OF FACT AND CONCLUSIONS OF LAW

### Re: Adv. Dkt. ## 1077, 1080, 1083, and 1086

Chapter 7 Trustee Dane S. Field's Motion to Approve Settlement of

Adversary, filed in the underlying bankruptcy case, ("Settlement Motion," BK Dkt.

#528), [1] was granted and a final Order was entered approving that Settlement on

December 5, 2013.  BK Dkt. #544.  However, the approved Settlement Agreement

---

[1] "BK Dkt." refers to the docket in the underlying bankruptcy case (10-BK-00235).
"Adv. Dkt." refers to the docket in this adversary case (10-AD-90126).  All other
docket references are preceded with their respective case identifiers.

requires, as a condition precedent to performance under the agreement, entry of a final order by an Article III Court disposing of the claims, parties, and issues raised in this adversary proceeding.

Having granted the Trustee's Motion to Approve Settlement, and having reviewed the following motions:

a.    Trustee's Motion for Default Judgment against Lloyd Y. Kimura (Adv. Dkt. #1077),

b.    Trustee's Motion to Dismiss Balance of Claims with Prejudice (Adv. Dkt. #1080), and

c.    Settling Defendants' Motion to Dismiss Cross-Claims (Adv. Dkt. #1083),

d.    Trustee's Motion for Submission of Findings and Recommendation for Entry of Final Judgment by Article III Court (Adv. Dkt. #1086),

and having considered the briefs, declarations, and exhibits filed in support of and in opposition to the various motions identified above, the arguments of counsel in support of and in opposition to the motions, and the records and files of the underlying bankruptcy case and this Adversary Proceeding, and good cause appearing therefor, the undersigned Bankruptcy Judge recommends that the U.S. District Court for the District of Hawaii issue the following findings of fact, conclusions of law, and order granting the Motions.

# I.    FINDINGS OF FACT:

## A.    DEBTOR'S BANKRUPTCY FILING

1.    On January 28, 2010, Maui Industrial Loan & Finance Co., Inc. ("MFC") and Lloyd Yoshio Kimura ("Kimura" and collectively with MFC, the "Debtors"), filed voluntary petitions for relief under Chapter 7 in this Court (the "Bankruptcy Court"), thereby initiating the cases of *In re Maui Industrial Loan & Finance Co.*, 10-BK-00235 and *In re Kimura*, 10-BK-00236 (collectively, the "Bankruptcy Cases").  BK Dkt. #1; 10-BK-00236, Dkt. #1.

2.    On January 28, 2010, this Court appointed Dane S. Field ("Trustee") to serve as the Chapter 7 trustee of the Bankruptcy Cases.

3.    On January 24, 2011 the two Bankruptcy Cases were substantively consolidated by Order of this Court.  BK Dkt. #122.

## B.    TRANSFERS FROM DEBTOR TO THE KEPOIKAI TRUST

4.    On January 1, 1987, more than 23 years before the Bankruptcy Cases were filed, Kimura was appointed by the Circuit Court of the Second Circuit to be successor trustee for the Trust Estate of Rose Kepoikai (the "Kepoikai Trust" or

"Trust"), charged with managing the Trust's assets.[2]  Adv. Dkt. #503-1 at 2.  At that time, Kimura also owned a significant interest in, and controlled, Maui Industrial Loan & Finance Co. ("MFC").

5.      Kimura, while acting as trustee of the Trust, caused the Trust to invest more than $1,554,000 in MFC between 1989 and 1997.  Adv. Dkt. #502-4 at 3-4.

6.      While Kimura was trustee, MFC made payments to the Trust in excess of $1,702,000, which ostensibly represented a partial return on the Trust's investment, with interest.  *Id.*

7.      Kimura served as the successor trustee of the Kepoikai Trust until October 26, 1999, when he resigned and was replaced by court approved successor, Robert E. Rowland ("Rowland").  Adv. Dkt. #503-2 and -3.

8.      Rowland is an attorney who was, at the time, a partner in the law firm of Mancini, Rowland & Welch, now known as Mancini, Welch & Geiger LLP ("Mancini").

9.      Following his appointment as successor trustee, Rowland discovered the transfers by the Trust to MFC that Kimura had engineered and concluded that Kimura "appeared to have improperly diverted certain funds from" the Trust.  Adv. Dkt. #772 at 2.

10.      Rowland demanded that Kimura return the money.  *Id.*

---

[2] *In the Matter of the Trust Estate of Rose Kepoikai, Late of Wailuku, Maui, Hawaii*, Deceased; Civ. No. 130(1), Second Circuit, State of Hawaii.

4

11.     Kimura responded, through counsel, that he "had lent those funds to third parties through his company [MFC] and that he would be liquidating loans to be in a position to return the funds to the [Trust]." *Id.*

12.     An accounting firm engaged by Rowland determined that Kimura owed the Trust approximately $1.5 million. *Id.* at 3.

13.     Kimura signed a promissory note in that amount with interest at ten percent and provided collateral for his obligation. *Id.*

14.     Kimura eventually repaid the note in full with cash and checks drawn on MFC's accounts in the sum total of $1,477,726.54. Adv. Dkt. #503-4 at 4.

15.     After Rowland collected these amounts and wound up the Trust's affairs, he distributed the Trust's assets to its beneficiaries.[3] Adv. Dkt. 772 at 3.

16.     The distributed assets included funds which Kimura caused MFC to pay to the Trust in satisfaction of Kimura's promissory note to the Trust. Adv. Dkt. #1045 at 9.

17.     All totaled, between 1989 and 2000, MFC transferred $3,179,783.85 to the Kepoikai Trust. Dkt. #503-4.

18.     Of that amount Rowland received $448,793.77 in funds on turnover from Kimura when Rowland took control of the Kepoikai Trust (Adv. Dkt. #1045,

---

[3] The Kepoikai Trust's beneficiaries (nearly 200 of them) were all named and sued in this Adversary Proceeding as subsequent transferee defendants.

at 9), and an additional $1,477,726.54 in transfers from MFC in satisfaction of Kimura's debt to the Trust.  Adv. Dkt. #503-4 at 4.

19.    On January 5, 2011, Kimura entered into a plea agreement in which he admitted that, through his control of MFC, he ran a Ponzi scheme from approximately 1986 until he filed his and MFC's bankruptcy petitions.  10-CR-00890, Dkt. #8.

20.    Kimura admitted that, from 1986 until the date of its bankruptcy filing, MFC, under Kimura's direction, enticed investors to invest in a Ponzi scheme which promised substantial returns.  *Id*.

### C.    **THE KEPOIKAI ADVERSARY**

21.    On October 17, 2010, Trustee commenced this Adversary Proceeding (the "Kepoikai Adversary") against, *inter alia*, Rowland, as successor trustee of the Kepoikai Trust, individually, and in his corporate capacity (Robert E. Rowland Attorney At Law A Law Corporation), and Mancini.  Adv. Dkt. #1.  In these Findings, Rowland and Mancini are referred to collectively as the "Settling Defendants."

22.    Also named as defendants in the Kepoikai Adversary were some 200 beneficiaries of the Kepoikai Trust (collectively, the "Beneficiaries").  *Id.*

23.    Trustee's complaint sought, among other things, to avoid transfers made by MFC to the Trust, Rowland, Mancini, and the beneficiaries of the Trust as

U.S. Bankruptcy Court - Hawaii   #10-90126   Dkt # 1098   Filed  12/18/13   Page 6 of 23

initial and/or subsequent transferees, pursuant to, *inter alia*, 11 U.S.C. §§ 544, 548 and 550 and state law. *Id.*

24.     On June 30, 2011, Trustee filed an eleven-count amended complaint in the Kepoikai Adversary in which he added, *inter alia*, claims against Rowland and Mancini sounding in tort ("Other Tort Claims") and legal malpractice claims against Rowland that he obtained by assignments from beneficiaries of the Kepoikai Trust with whom Trustee had settled claims he had asserted against them in the Kepoikai Adversary (the "Assigned Claims"). Adv. Dkt. #292.

25.     On varying dates, some Beneficiaries asserted cross-claims against Rowland and Mancini related to the Transfers.  Adv. Dkt. ##66, 77, 104, 305, 310, 373, 388, 390, 393, 394, 395, 397, 414, 440, 452, 454, 516, 970.

26.     Certain beneficiaries of the Kepoikai Trust have settled directly with the Trustee related to the Transfers, and have paid settlement sums to the Trustee in connection with such settlements.  Adv. Dkt. ##747, 756, 756, 780, 781, 781, 782, 784, 789, 790, 799, 800, 806, 809, 813, 814, 815, 825, 826, 827, 828, 843, 844, 852, 856, 876, 884, 950, 955, 972, 977, 996, 1022, and 1025.

27.     Settling Defendants deny that the Transfers are avoidable or recoverable, and deny that they are liable to the Trustee in connection with any of the Assigned Claims.  Trustee and the Settling Defendants have engaged in

7

extensive litigation of the Kepoikai Adversary in both the Bankruptcy and District Courts. *See also:* 11-CV-00552 LEK and 11-CV-00559 LEK.

28. Following extensive discovery, on December 9, 2011 Trustee moved for partial summary judgment on Counts Two, Three, and Four of the Amended Complaint (Adv. Dkt. #502), as follows:

    (a) On Count Two, the Trustee sought a ruling that, pursuant to 11 U.S.C. § 550, Defendants are either the initial transferees of certain transfers from the Debtor or are subsequent transferees of such initial transferees;

    (b) On Count Three, the Trustee sought a ruling that the transfers from MFC are voidable as fraudulent, pursuant to the Hawaii Uniform Fraudulent Transfer Act, HRS § 651C-4; and

    (c) On Count Four, that the Trustee can avoid the transfers from the Debtor pursuant to 11 U.S.C. § 544(b).

29. The Settling Defendants opposed the summary judgment motion, as did certain of the Beneficiaries. Adv. Dkt. ## 520, 521, 522, 523, 525, 531, 690, 749, 750, 759, 761, 762, 770, 774, 823, 887, 900, and 902.

30. Rowland argued that he could not be held "personally liable" for the alleged transfers, since he received the transfers in his capacity as successor trustee of the Kepoikai Trust and therefore lacked dominion over the money and could not be held liable as a transferee. Adv. Dkt. #762 at 16.

8

31.     He also argued that he took the funds from the Debtor in good faith and the transfers therefore were not avoidable.  He also challenged the admissibility of the Trustee's evidence.  *Id.* at 22.

32.     Mancini made similar arguments in opposition to the Trustee's summary judgment motion. Adv. Dkt. #761.

33.     In a supplemental opposition, Mancini also raised statute of limitations issues.  Adv. Dkt. #902.

34.     On July 30, 2012, the Bankruptcy Court granted in part, and denied in part, the Trustee's motion for summary judgment (Adv. Dkt. #944),[4] ruling as follows:

  (a)     The Kepoikai Trust was the "initial transferee" from which the transfers could be recovered;

  (b)     Transfers totaling $2,383,774.66 by the Debtor to the Kepoikai Trust are avoided;

  (c)     Trustee may recover the avoided transfers, plus prejudgment interest at 10% per annum from the date of the respective transfers, from the Kepoikai Trust;

  (d)     Rowland is personally liable for the Kepoikai Trust's obligation to the Trustee;

---

[4] *Field v. Kepoikai (In re MFC)*, 477 B.R. 134 (Bankr. D. Haw. 2012).

(e)     Trustee may recover from the beneficiaries of the Kepoikai Trust any distributions they received from the Trust plus prejudgment interest at 10% per annum from the date of distribution to the respective beneficiary; and

(f)     Factual issues precluded summary judgment in favor of Settling Defendants on their good-faith defense to recovery of avoidable transfers as subsequent transferees.

35.     The Settling Defendants subsequently moved for reconsideration of the Bankruptcy Court's July 30, 2012 ruling on the Trustee's summary judgment motion.  Adv. Dkt. #961.

36.     Rowland argued that the Bankruptcy Court erred in concluding that the Kepoikai Trust was an initial transferee and also that Rowland could be held personally liable to return the transfers.  *Id.*

37.     Rowland also argued that the Bankruptcy Court should reconsider and amend its award of prejudgment interest.  *Id.*  Mancini joined in Rowland's arguments.  Adv. Dkt. #966.

38.     On November 21, 2012, the Bankruptcy Court issued an order granting the motion in reconsideration in part and denying it in part.  Adv. Dkt. #1045.[5]

---

[5] *Field v. Kepoikai (In re MFC)*, 483 B.R. 346 (Bankr. D. Haw. 2012).

U.S. Bankruptcy Court - Hawaii   #10-90126   Dkt # 1098   Filed  12/18/13   Page 10 of 23

39.     The Bankruptcy Court reduced Mr. Rowland's personal liability for the Kepoikai Trust's obligations to the Trustee from $2,383,774.66 to $1,926,520.31, but denied the motion for reconsideration in all other respects.  *Id.*

40.     The Bankruptcy Court's rulings on the motion for summary judgment and the motion for reconsideration did not resolve all issues in the case against the Settling Defendants.  For example, remaining for resolution are the liability of Rowland for the balance of the Transfers, the liability of Mancini (as the law firm in which Rowland was a partner, or as mediate transferee), and the legal malpractice claims against the Settling Defendants that the Trustee acquired by way of assignment from certain of those Beneficiaries with whom the Trustee had settled.

41.     The Bankruptcy Court had previously held that the Settling Defendants were entitled to a jury trial on those claims.  *See also* Adv. Dkt. #1044.

42.     Because of limitations on the Bankruptcy Court's jurisdiction (*see, e.g.*, *In re Bellingham Ins. Agency, Inc.*, 702 F.3d 476 (9th Cir. 2012), *cert. granted*) and its inability to empanel a jury, all issues entitled to be tried to a jury would have to be tried in the District Court.

43.     For these reasons, among others, the Bankruptcy Court held that once it had "completed all pre-trial matters, [it would] generate a comprehensive set of recommended findings and a proposed judgment for the District Court."  Adv. Dkt. #1045 at 13.  *See also* Judge Leslie E. Kobayashi's Order Denying Without

U.S. Bankruptcy Court - Hawaii   #10-90126   Dkt # 1098   Filed  12/18/13   Page 11 of 23

Prejudice Defendants' Motion to Withdraw Reference (11-CV-00552, Dkt. #42), Adv. Dkt. #524.[6]

44.   Settling Defendants have made it clear to Trustee that they intended vigorously to dispute the Trustee's remaining claims in a jury trial before the District Court, and also that they intended to seek plenary review of the Bankruptcy Court's summary judgment rulings in the District Court.

45.   Based on the foregoing, Trustee has acknowledged that he is aware that his remaining claims would be vigorously disputed at trial before the District Court.

46.   Further, Trustee understands and appreciates that the Settling Defendants would seek plenary review of the Bankruptcy Court's summary judgment rulings in the District Court if the Kepoikai Adversary does not reach settlement.

47.   In light of the posture of the underlying litigation and the announced intent of the Settling Defendants to both try the remaining claims to a jury and seek review of the Bankruptcy Court's summary judgment rulings, Trustee is presented with significant risks and expense of going forward and believes this Court could find it is uncertain whether and to what extent Trustee could recover on his claims against the Settling Defendants.

---

[6] *Field v. Kepoikai*, 2011 WL 6934757 (D. Haw. 2011)

M F&R (12/18/2013 09:32)

U.S. Bankruptcy Court - Hawaii   #10-90126   Dkt # 1098   Filed 12/18/13   Page 12 of 23

48.     Trustee recognized that litigating the claims would be very costly and time-consuming.

49.     Trustee further acknowledged that establishing his claims and rebutting the Settling Defendants' defenses would clearly require substantial further research and discovery, as well as a trial and extensive further briefing.

50.     Trustee determined, in an exercise of his business judgment, that the uncertainty as to whether and to what extent he would prevail, coupled with the cost and delay inherent in litigation, weighed in favor of agreeing – after hard negotiation, including mediation before Randall J. Newsome (Ret.), former chief judge of the Bankruptcy Court for the Northern District of California – to settle with the Settling Defendants for payment to the Trustee of the total sum of $2,259,305.56.

51.     Although Trustee conceivably might receive a larger sum if he were able to successfully prosecute costly and lengthy litigation, accepting prompt, certain payment of $2,259,305.56 – even if less than the amount of the estate's potential claim as alleged by the Trustee – Trustee came the conclusion, and this Court concurred, that such a settlement is appropriate.

**D.     THE SETTLEMENT AGREEMENT**

52.     Effective October 14, 2013, the Trustee and the Settling Defendants entered into a Settlement Agreement and Mutual Releases (the "Settlement

U.S. Bankruptcy Court - Hawaii   #10-90126   Dkt # 1098   Filed  12/18/13   Page 13 of 23

Agreement"), attached hereto as Exhibit 1.  The key elements of the Settlement

Agreement are as follows:[7]

      (a)    The Settling Defendants shall pay the total sum of $2,259,305.56 (the "Settlement Payment") to the Trustee, within ten days after the Effective Date (as defined in the Settlement Agreement);

      (b)    Trustee, in connection with obtaining court approvals as set forth in the Settlement Agreement, shall file in the Kepoikai Adversary, pursuant to Rule 7041 of the Federal Rules of Bankruptcy Procedure and Rule 41(a)(1)(i) of the Federal Rules of Civil Procedure, a motion to dismiss, with prejudice, all claims asserted by the Trustee in the Kepoikai Adversary against the Settling Defendants and all other defendants, including the Beneficiaries, excepting only the claims against Lloyd Y. Kimura, which shall be determined by default judgment;

      (c)    The Trustee (on his own behalf and on behalf of the Debtor and the Debtor's estate) and the Settling Defendants shall mutually release one another, and Trustee shall release all claims against the Beneficiaries and covenant to not sue any of the Beneficiaries seeking recovery of any released claim or cause of action;

      (d)    Any Beneficiary who had already settled the Kepoikai Adversary with the Trustee and paid a sum in settlement can assert a claim[8] against the bankruptcy estate in an amount not to exceed the amount of settlement funds paid by each such settled Beneficiary claimant to the Bankruptcy Estate, pursuant to § 502(h) of the Bankruptcy Code and Rule

---

[7]  In the event of a conflict between this summary of the settlement agreement herein, and the Settlement Agreement as attached, the terms found in the attached Settlement Agreement shall control.

[8]  "Fed. R. Bankr. Pro. 3002(c)(3) requires that any claim filed by a Kepoikai Beneficiary pursuant to the Settlement Agreement must be "filed within 30 days after the judgment becomes final ..."  The "judgment" is contemplated to be any final judgment entered by the Article III court adopting these Findings and Recommendations.  Qualifying Beneficiaries should obtain claim forms from the Bankruptcy Court (http://www.hib.uscourts.gov/forms/index_forms_menu.htm), official form B-10, and timely submit it to the Bankruptcy Court, 1132 Bishop St, Ste. 250L, Honolulu HI 96813.

3002(c)(3) of the Federal Rules of Bankruptcy Procedure, and any such claim will be allowed and paid as a Class A unsecured claim, as defined by the Order Granting Motion to Approve Procedure for Bifurcation of Unsecured Claims field by Ponzi Scheme Investors (dkt. #253); and

      (e)    The Trustee shall seek (and has sought) approval of the Settlement Agreement and the settlement embodied therein from the Bankruptcy Court and the U.S. District Court for the District of Hawaii by submission of findings and recommendations for entry of a final judgment in the Kepoikai Adversary.

53.    Having compared, among other things, the terms of the compromise with the likely risks and rewards of litigation, the Trustee concluded, and this Court concurs, that the Settlement Agreement is fair and equitable. Declaration of Dane S. Field, BK Dkt. #528-2.

54.    On December 5, 2013, 2013, the Bankruptcy Court entered its Order Granting Trustee's Motion to Approve Settlement of Adversary. BK Dkt. #544. That Order contained a provision that in the event the parties were unable to obtain a final order disposing of the Kepoikai Adversary by an Article III Court, the settlement would be void *ab initio*, and this Adversary would proceed forward to trial.

### D.    <u>JUDGMENT OF DEFAULT AGAINST LLOYD KIMURA</u>

55.    Subsequent to commencement of the Kepoikai Adversary, Trustee requested and received Clerk's Entry of Default against Defendant Kimura. Adv. Dkt. #75, 76.

56. Trustee, in connection with his Motion for Summary Judgment against the non-defaulting defendants, established that MFC transferred $3,179,783.85 to the Kepoikai Trust. Adv. Dkt. #944 at 13.

57. Of that amount, $1,702,057.31 was transferred to the Kepoikai Trust during the time that Kimura was trustee of that trust.

58. Trustee has settled with Settling Defendants for substantial consideration, in exchange for the dismissal of all claims, against all parties, in the Kepoikai Adversary other than Defendant Kimura. The Settlement specifically permits Trustee to obtain judgment by default against Kimura.

59. Trustee's Motion for Judgment by Default on Counts Two, Three, and Four of the First Amended Complaint against Defendant Lloyd Y. Kimura (adv. dkt. 1077) is consistent with the Settlement Agreement.

## E. TRUSTEE'S DISMISSAL OF BALANCE OF CLAIMS

60. The Kepoikai Adversary was commenced by Trustee on behalf of the Bankruptcy Estate, and Trustee remains the sole plaintiff, entitled to bring the direct claims articulated in the First Amended Complaint. Adv. Dkt. #292.

61. Trustee obtained by way of assignment the claims of various Beneficiary Defendants. *Id*. at 28-31; Adv. Dkt. #1037.

62. Each Beneficiary Defendant assignor irrevocably assigned all their individual rights against the Kepoikai Trust, Rowland, Mancini, and Kimura, to

M F&R (12/18/2013 09:32)

U.S. Bankruptcy Court - Hawaii   #10-90126   Dkt # 1098   Filed   12/18/13   Page 16 of 23

Trustee. Adv. Dkt. #211-12, at 1-2; #362-2 through #362-12, at 10-16; #507-1 through #507-32, at 10-16; #792-1 through #792-11, at 10-16.

63. Trustee has settled with Settling Defendants for substantial consideration and in exchange for the dismissal of all claims, against all parties, in the Kepoikai Adversary other than Defendant Kimura.

64. Trustee's Motion to Dismiss Balance of Case, with Prejudice, including Cross-Claims assigned to Trustee, is consistent with the terms of the Settlement Agreement.

## F.    SETTLING DEFENDANTS' DISMISSAL OF CROSS-CLAIMS

65. Numerous cross-claims have been filed in the Kepoikai Adversary by Beneficiary Defendants against the Settling Defendants. Adv. Dkt. ## 66, 77, 104, 305, 310, 373, 388, 390, 393, 394, 395, 397, 414, 440, 452, 454, 516, 970.

66. All cross-claims filed, except Adv. Dkt. #305, seek only contribution, indemnity, or reimbursement.

67. The cross-claims asserted by multiple Beneficiary Defendants in Adv. Dkt. #305 mirror those brought by the Trustee in the First Amended Complaint as assigned claims.

68. Trustee has, by way of his dismissal motion, withdrawn the cross-claims obtained by way of assignment as a condition of Settlement. Adv. #66, 77, 104 and eleven of the parties asserting cross-claims in #305.

M F&R (12/18/2013 09:32)

U.S. Bankruptcy Court - Hawaii   #10-90126   Dkt # 1098   Filed  12/18/13   Page 17 of 23

69. Trustee's dismissal motion, as a result of Settlement, also extinguishes the liability of those cross-claimants who were found liable by way of the interlocutory summary judgment order, and therefore, those cross-claimants' indemnity and contribution claims have become moot. Adv. Dkt. ##414, 440, 454, and 516.

70. Of the remaining cross-claims, none have actively participated in case prosecution, conducted discovery, or attended scheduling hearings. Adv. Dkt. ##305, 310, 373, 388, 390, 393, 394, 395, 397, 452, and 970.

71. The cross-claims are all entirely derivative or duplicative of Trustee's fraudulent transfer claims against Settling Defendants and, if not dismissed, would interfere with the Settlement and jeopardize Trustee's recovery of estate assets because Trustee and cross-claimants from competing for the same limited pool of funds.

72. Under the terms of the Settlement Agreement, each of the cross-claimants are entitled to a Class A restitution claim through the Bankruptcy Case.

## II.   CONCLUSIONS OF LAW

### A.   <u>FINALITY OF COURT'S ORDER APPROVING SETTLEMENT</u>

1. Generally, orders approving Trustee's settlement of an adversary proceeding, as a discrete and separate part of a bankruptcy case, are final for appellate purposes. *Adam v. Itech Oil Co. (In re Gibraltar Resources, Inc.)*, 210

U.S. Bankruptcy Court - Hawaii   #10-90126   Dkt # 1098   Filed 12/18/13   Page 18 of 23

F.3d 573, 576 (5th Cir. 2000) ("A bankruptcy court's approval of a settlement order," pursuant to Fed. R. Bankr. P. 9019, "that brings to an end litigation between parties is a final order"); *In re Yellowstone Mountain Club, LLC*, 460 B.R. 254, 260-261 (Bankr. D. Mont. 2011); *In re A&C Properties*, 784 F.2d 1377, 1380 (9th Cir. 1986).

2.     This is true even where the settlement is in connection with a more complex sequence of events, and is conditioned on approval of motions and approvals in other separate cases. *In re The Bennett Funding Group, Inc.*, 439 F.3d 155, 162-63 (2d Cir. 2006).

3.     Finality in this context may not necessarily require ultimate performance under a settlement which is subject to various conditions subsequent. However, it will result in finality that cuts off the rights of parties-in-interest to object to the settlement after entry of any order approving the settlement, and the passage of the time limitations under Bankruptcy Rules 8002, 9023, and 9024.

4.     The Bankruptcy Court has found that the Settlement Agreement is fair and equitable, and made in good faith, and therefore approved same, but that Settlement is subject to the conditions that the related Motions in the Kepoikai Adversary are granted by way of a final order from the U.S. District Court.

## B. TRUSTEE'S MOTION FOR JUDGMENT BY DEFAULT AGAINT KIMURA

5.     The Court makes the Conclusions of Law in Paragraphs 6-10 only with respect to Defendant Lloyd Y. Kimura and not with respect to the Settling Defendants or the Beneficiaries.

6.     The $3,179,783.85 transferred from MFC to the Kepoikai Trust was fraudulent pursuant to HRS § 651C-4(a).

7.     The $3,179,783.85 transferred is avoidable by Trustee pursuant to 11 U.S.C. § 544(b)(1).

8.     Pursuant to HRS § 560.7-306(b), as it existed prior to 2006, Kimura is personally liable for those transfers that occurred during his tenure as successor trustee, to wit $1,702,057.31.

9.     Trustee is entitled to recover from Kimura, pursuant to 11 U.S.C. § 550(a).

10.     Trustee is entitled to prejudgment interest on each transfer from the date of transfer until entry of final judgment.  Trustee has established that amount as $3,140,611.08 through August 1, 2013, and accruing at the rate of $466.32 per day thereafter until entry of final judgment.

M F&R (12/18/2013 09:32)

U.S. Bankruptcy Court - Hawaii   #10-90126   Dkt # 1098   Filed  12/18/13   Page 20 of 23

## C.    TRUSTEE'S MOTION TO DISMISS BALANCE OF CASE

11.    Trustee has established cause, pursuant to Rule 41(a)(2) of the Federal Rules of Civil Procedure, to dismiss all his claims, both direct and assigned, against all parties, except those against Defendant Lloyd Y. Kimura.

12.    Trustee has requested, and this Court finds it proper, that such dismissal is with prejudice.

## D.    SETTLING DEFENDANTS' JOINT MOTION TO DISMISS CROSS-CLAIMS

13.    The Settlement Agreement, which requires payment of $2,259,305.56 by Settling Defendants to the Trustee in exchange for, *inter alia*, the Trustee's release of all claims against the Beneficiaries, resolves the cross-claims filed by parties that subsequently assigned their rights to Trustee.  Therefore, all cross-claims filed by Trustee's assignors are dismissed, with prejudice.  Adv. Dkt. ##66, 77, 104 and 305.

14.    The Settlement Agreement, which requires payment of $2,259,305.56 by Settling Defendants to the Trustee in exchange for, *inter alia*, the Trustee's release of all claims against the Beneficiaries, resolves the cross-claims filed by parties that seek only indemnity and contribution from Settling Defendants. Therefore, all cross-claims seeking only indemnity and contribution are dismissed, with prejudice.  Adv. Dkt. ##305, 414, 440, 454 and 516.

U.S. Bankruptcy Court - Hawaii   #10-90126   Dkt # 1098   Filed  12/18/13   Page 21 of 23

15.     The Settlement Agreement, which requires payment of $2,259,305.56 by Settling Defendants to the Trustee in exchange for, *inter alia*, the Trustee's release of all claims against the Beneficiaries, also provides for the allowance of Section 502(h) claims by Beneficiary Defendants who paid settlements to Trustee in exchange for dismissal of Trustee's claims.   This provides a basis for the equitable dismissal of cross-claims pursuant to 11 U.S.C. § 105(a) and Fed. R. Civ. Pro. 41(a)(2), and those cross-claims are thus dismissed, with prejudice.   Dkt. ##305, 310, 373, 388, 390, 393, 394, 395, 397, 452, 970.

16.     Additionally, the cross-claims are entirely derivative or duplicative of Trustee's fraudulent transfer claims against Settling Defendants and should be dismissed, with prejudice, to preclude any possibility of jeopardizing Trustee's recovery of estate assets by interfering with the Settlement. *See In re Madoff*, 848 F. Supp.2d 469, 490-91 (S.D.N.Y. 2012) (affirming permanent injunction barring third party claims that "are dependent on and identical in substance to the claims that are being settled [by a chapter 7 trustee]").   Like the enjoined claims in *Madoff*, the cross-claims here are general claims common to all of the beneficiaries of the Rose Kepoikai Trust sued by Trustee.  None of the cross-claims contain any allegations that Settling Defendants committed any acts directed specifically against cross-claimants, other than paying them monies that the Trustee sought to recover from them (and also from Settling Defendants).

U.S. Bankruptcy Court - Hawaii   #10-90126   Dkt # 1098   Filed  12/18/13   Page 22 of 23

17.    If any of the conclusions of law stated herein shall be deemed to be findings of fact, they are hereby incorporated by reference in the findings of fact section above.

**END OF ORDER**

M F&R (12/18/2013 09:32)

U.S. Bankruptcy Court - Hawaii   #10-90126   Dkt # 1098   Filed  12/18/13   Page 23 of 23